IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY STOCKER MINA,<br>TLC DREAMS FOUNDATION, and<br>THE TRUTH TODAY FOR A BETTER<br>TOMORROW POLITICAL COMMITTEE, | :<br>:<br>:<br>:<br>: | |
| Plaintiffs, | :<br>: | CIVIL ACTION NO. 14-6261 |
| v. | :<br>: | |
| CHESTER COUNTY, CHESTER COUNTY<br>COURT OF COMMON PLEAS,<br>PRESIDENT JUDGE JAMES P.<br>MACELREE, JUDGE ANTHONY<br>SARCIONE, JUDGE THOMAS GAVIN,<br>JUDGE JACQUELINE CARROLL CODY,<br>JUDGE KATHERINE B.L. PLATT, JUDGE<br>MARK L. TUNNELL, JUDGE JOHN L.<br>BRAXTON, CHESTER COUNTY<br>DOMESTIC RELATIONS SECTION<br>(CCDRS), CCDRS DIRECTOR JOSEPH M.<br>WATERS, CCDRS DEPUTY DIRECTOR<br>WILLIAM R. WHITEHEAD, CCDRS<br>DIRECTOR ROBIN KELLY, CCDRS<br>ADMINISTRATIVE SECRETARY<br>CATHY SMITH, CCDRS ENFORCEMENT<br>OFFICER SHAUNA JOHNSON, CCDRS<br>STAFF ATTORNEY MARY JONES,<br>CCDRS HEARING OFFICER RICHARD<br>LOMBARDI, CCDRS HEARING OFFICER<br>ROSE ANDERSON, FAMILY COURT<br>SECRETARY JANET SNYDER,<br>DIRECTOR OF JUVENILE PROBATION<br>ROBERT E. KYLE, CHESTER COUNTY<br>COURT REPORTER CHIEF WILLIAM<br>HANDY, CHESTER COUNTY DISTRICT<br>ATTORNEY (CCDA) THOMAS HOGAN,<br>CCDA PETER HOBART, CCDA JOSEPH<br>CARROLL (FORMER DA), CCDA CRISTIN<br>KUBACKE, CCDA CHARLES GAZA,<br>WEST CHESTER POLICE DEPARTMENT<br>(WCPD), WCPD CHIEF SCOTT BOHN,<br>WCPD DETECTIVE STAN BILLIE,<br>WCPD SGT. LOUIS DESCHULLO, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |

WCPD OFFICER GREG CUGINO,                              :
CHESTER COUNTY PROBATION                               :
COLLECTION OFFICER DANIELLE                            :
CUGINO, CHESTER COUNTY                                 :
PROBATION OFFICER KEITH LAURER,         :
CHESTER COUNTY PUBLIC DEFENDER          :
JOHN MERRICK, CHESTER COUNTY                           :
PUBLIC DEFENDER NATHAN SHENKER,  :
PROTHONOTARY BRYAN WALTERS,                            :
DAILY LOCAL NEWS COURTHOUSE,                           :
ATTORNEY GENERAL TOM CORBETT,           :
ATTORNEY LEONARD J. RIVERA,                            :
ATTORNEY DAWSON RICHARD MUTH,        :
ATTORNEY ERIC TRAJTENBERG,                             :
DAILY LOCAL NEWSPAPER, OPTIMA                          :
WEB DESIGN/ENET (RON SHUR, NICK                        :
POTOPOV),  FEDERAL COURT JUDGE                         :
LUIS FELIPE RESTREPO, FEDERAL                          :
COURT JUDGE MITCHELL S.                                :
GOLDBERG, CHESTER COUNTY                               :
PROBATION OFFICER CHARLES                              :
MAINES, WELLS FARGO BANK,                              :
MONTGOMERY COUNTY,                                     :
MONTGOMERY COUNTY COURT OF                             :
COMMON PLEAS, JUDGE BERNARD A.          :
MOORE, JOHN AND/OR JANE DOE                            :
SECRETARY OR LAW CLERK OF J.                           :
BERNARD A. MOORE, LUMBER                               :
LIQUIDATORS, DELAWARE COUNTY,           :
DELAWARE COUNTY JUVENILE                               :
DETENTION CENTER, MARK A.                              :
MURRAY, DIRECTOR OF DELAWARE                           :
COUNTY JUVENILE DETENTION,                             :
MEDCENTER 100, DISTRICT JUDGE                          :
WILLIAM KRAUT, CHESTER COUNTY          :
HOSPITAL, MICHAEL J. DUNCAN CC                         :
HOSP. CEO, WEST GOSHEN TOWNSHIP,        :
WEST GOSHEN POLICE DEPARTMENT,          :
and WEST GOSHEN POLICE OFFICER                         :
JOHN J. LISS,                                          :
                                                       :
                    Defendants.                        :

## MEMORANDUM OPINION

Smith, J.                                                                October 29, 2015

Litigants in federal court have a statutory right to appear *pro se*.  *See* 28 U.S.C. § 1654.
Referred to as a "right of high standing," this right "reflects a respect for the choice of an
individual citizen to plead his or her own cause."  *Cheung v. Youth Orchestra Found. of Buffalo,
Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) (internal quotation marks and citations omitted).  In securing
this vision, federal courts sometimes strive to soften the blow of certain procedural rules in *pro
se* cases to ensure that claims are resolved on the merits, rather than on technical mishaps.  *See
Jones v. Unemployment Comp. Bd. of Review*, 381 F. App'x 187, 189 (3d Cir. 2010) (explaining
that, under certain circumstances, it is an abuse of discretion to dismiss a *pro se* complaint for
failure to oppose a motion to dismiss).  Yet, because federal courts are tribunals of limited
jurisdiction, they can reach the merits of disputes only when those disputes engage federal
jurisdiction.  Unlike procedure, though, jurisdiction admits of no special treatment for *pro se*
litigants.  The instant *pro se* action, an action that appears to center on an elaborate governmental
conspiracy against the plaintiffs spanning almost twenty years, has provided a unique
opportunity to observe how both of these fundamental strands of federal court litigation play out.

And played out it has.  This action has, on multiple occasions, called upon the court to
indulge procedural flexibility in clarifying the plaintiffs' version of the claim-generating facts so
that the court can determine whether this action properly belongs in federal court.  All the while,
the court has had to grapple with some independent (and peculiar) procedural puzzles along the
way.

After sifting through the hundreds of pages that make up the complaint, the amended
complaint, and the numerous other documents filed by the plaintiffs (some of them filed as

additional amended complaints and some of them filed in contravention of procedural rules and court orders) and after digesting the hundreds of minutes spent in court that make up the plaintiffs' verbal attempts to clarify the factual basis of this case, the court has obtained a good sense of the substance of this case.  Unfortunately for the plaintiffs, they will not receive a merits determination in this forum because, from a federal perspective, this case is truly about ensuring that federal courts remain courts of *limited* jurisdiction.  The court, therefore, dismisses this action for want of subject-matter jurisdiction.  In turn, this disposition renders it unnecessary for the court to consider many of the outstanding motions, which are denied as moot unless otherwise noted.

## I.    PROCEDURAL HISTORY

This is the fifth *pro se* action (there is another currently pending before another judge, as explained below) that the plaintiff, Anthony Stocker Mina ("Mina"), has brought before the undersigned.[1]  The court previously denied the plaintiff relief in all four of his prior actions.  On September 29, 2015, the Third Circuit summarily affirmed these denials.  *See Mina v. Hogan*, No. 15-1642 (3d Cir. Sept. 29, 2015); *Mina v. Muth*, No. 15-1643 (3d Cir. Sept. 29, 2015); *Mina v. ENET Adver.*, No. 15-1644 (3d Cir. Sept. 29, 2015); *Mina v. Hogan*, No. 15-1645 (3d Cir. Sept. 29, 2015).  Besides containing considerably more allegations and defendants than any of these prior actions (including the addition of a host of new judges, including two federal judges in this district, as defendants), the instant action differs from the others in that Mina has paid the

---

[1] The prior four actions were originally docketed as follows: (1) *Anthony Stocker Mina v. DA Thomas Hogan, Dawson R. Muth, Goldberg, Meanix, Muth, & McCallin Law Firm, and Judge Thomas Gavin*, No. 14-mc-221; (2) *Anthony Stocker Mina v. DA Thomas Hogan, Dawson R. Muth, Goldberg, Meanix, Muth, & McCallin Law Firm, and Judge Thomas Gavin*, No. 14-mc-222; (3) *Anthony Stocker Mina v. Enet Advertising, Optima Web Design, Ron Shur, Nickolai Potapov, and Judge John L. Braxton*, No. 14-mc-254; and (4) *Anthony Stocker Mina v. DA Thomas Hogan, DA Nicholas Casenta, and Judge John Mark Tunnell*, No. 14-mc-259.  In all four actions, Mina requested, and was granted, permission to proceed *in forma pauperis*.

filing fee and has joined two other parties, TLC Dreams Foundation and the Truth Today for a Better Tomorrow Political Committee, as plaintiffs.[2]

The plaintiffs began this action on October 31, 2014, by filing a 132-page complaint.  *See* Doc. No. 1.  In the complaint, the plaintiffs named forty-seven defendants (dubbing them the "Chester County Molluscum Penis Crime Family"), advanced various causes of action under federal and state law, and sought various forms of relief, including over ten million dollars in compensatory and punitive damages and a court order directing that all of the defendants be arrested for criminal conspiracy.  *See id.*  They also attached almost 200 pages worth of exhibits to the complaint.  *See* Doc. Nos. 1-1 to 1-7.  Before any of the defendants filed a response to the complaint, the plaintiffs filed an equally lengthy amended complaint on March 23, 2015.  *See* Doc. No. 15.  In the amended complaint, the plaintiffs named sixty-two defendants (adding more members to the "Chester County Molluscum Penis Crime Family"), advanced additional causes of action, and sought additional forms of relief, including a court order directing that all of the defendants be arrested for official oppression, a court order directing various state and local actors to perform various tasks, and a court order directing two federal judges to publish certain orders online.  *See id.*  Like before, they also submitted numerous exhibits.  *See* Doc. Nos. 15-1 to 15-41.  This time, the exhibits comprised over 300 pages.

---

[2] Because Mina is proceeding *pro se* and no attorney has entered an appearance on behalf of any of the plaintiffs, it is not even clear that the two entity-plaintiffs are proper parties.  *See In re Sutcliffe*, 573 F. App'x 89, 91 (3d Cir. 2014) (observing that "a non-lawyer *pro se* litigant" "may not represent parties in the federal courts other than himself" (emphasis added) (citations omitted)).  But because the court is dismissing this action for lack of jurisdiction, the court need not press this issue any further.  As to the payment of the filing fee, later documents revealed that Mina paid the filing fee "because of personal experiences with the U.S. Eastern District Court using the 'screening process' to deprive Plaintiff from information, including PUBLIC INFORMATION that was needed for litigation."  *See* Doc. No. 39 at ¶ 3.

Motion practice quickly ensued.[3]  In response to a couple of motions to dismiss, and on April 27, 2015, the plaintiffs filed a motion to stay the disposition of those motions until discovery has been completed.  *See* Doc. No. 24.  Approximately one week later, the court scheduled oral argument on the above motions for May 20, 2015.  *See* Doc. No. 26.  After another motion to dismiss was filed, the court rescheduled the argument to June 5, 2015, at the request of the plaintiffs.  *See* Doc. No. 29.  In that order, the court also indicated that the court would hear argument at that time on any and all outstanding motions.  *See id.*  In the interim, more documents were filed, including another motion to dismiss.  Of particular note, the plaintiffs filed a response in opposition to the motion to dismiss filed on behalf of the defendants, the Honorable Luis Felipe Restrepo and the Honorable Mitchell S. Goldberg (the two federal judges originally named in this action), in which they indicated that they have filed a private criminal complaint against Judge Goldberg for "violating mandating reporting of sex abuse laws" and advised of their intention to file another amended complaint that requests that Judge Goldberg "be evaluated by a mental health expert."  *See* Doc. No. 30 at 2.  The court again continued the oral argument at the request of the plaintiffs to June 17, 2015.  *See* Doc. No. 33.  As the filings continued to grow, the court, for a third time, continued the oral argument at the request of the plaintiffs to July 8, 2015.  *See* Doc. No. 37.

On that date, the court held oral argument, lasting two hours and five minutes, on all outstanding motions and took all matters under advisement.  Not surprisingly, motion practice resumed after the conclusion of this proceeding.  During this round of filings, the plaintiffs filed an interesting response in opposition to a motion to dismiss, in which they both indicated that they would be filing another amended complaint after discovery, adding claims under the

---

[3] Because this practice has become quite involved, and to keep the discussion of the procedural history to a manageable length, the court works toward simplicity as is reasonably possible.

Thirteenth Amendment for involuntary servitude and a request for a court order compelling certain defendants to attend anger management classes, and noted that some of the defendants had taken advantage of Mina in the past "by means of the way his brain processes information." Doc. No. 59 at 2-3, 7.

On July 16, 2015, the plaintiffs filed a request for a default judgment (or, more properly, a request for a default) against thirty-one defendants with the clerk of court. *See* Doc. No. 61. On the same date, and without permission from either the defendants or the court, the plaintiffs also filed a 151-page second amended complaint. *See* Doc. No. 65. In this complaint, the plaintiffs added additional causes of action and requested additional forms of relief, including the previously-mentioned request for a court order directing that Judge Goldberg be evaluated by a mental health expert. *See id.* at 151. As could be expected, motions continued to come in and the court scheduled an evidentiary hearing on the issue of service with respect to the defendants who purportedly defaulted. *See* Doc. No. 69. Before that hearing could occur, the plaintiffs filed another request for a default judgment with the clerk of court, this one requesting a default judgment against the defendant, "Attorney General Tom Corbett," in the amount of $1,999,999.00. *See* Doc. No. 76.

One day later, on July 24, 2015, the court entered a comprehensive case management order that addressed various aspects of the case's evolution. *See* Doc. No. 78. First, the court set aside and struck all defaults, prohibited the plaintiffs from filing any future requests for defaults, and canceled the above-mentioned evidentiary hearing. *See id.* Second, the court struck the second amended complaint for failure to comply with the Federal Rules of Civil Procedure. *See id.* Third, the court stayed all pleadings and discovery pending further order of court. *See id.* Fourth, the court directed the plaintiffs to show cause why this matter should not be dismissed

for lack of subject-matter jurisdiction and scheduled oral argument and a hearing on the issue of jurisdiction for August 21, 2015. *See id.* Finally, and due to concerns raised by opposing counsel regarding certain distasteful emails that the plaintiffs had sent to certain opposing parties, the court directed the plaintiffs to communicate with the court and opposing parties only through the electronic filing system—the court had previously granted Mina's request to use this system. *See id.*

In contravention of this order, Mina sent an email to the court four days later. *See* Doc. No. 80. In this email, Mina invited the court to review a recorded (and rather unpleasant) interaction that he experienced with his daughter and a defendant. *See id.* The email also notified the court that Mina had reported the undersigned to different law enforcement agencies for misconduct (it also became readily apparent that Mina also had misconduct issues with the clerk of court). *See id.* The email went on to express Mina's dissatisfaction with the court's July 24 order and hinted at a desire to file a motion for recusal because the undersigned "lacked the ethical standards needed for [his] case." *See id.* Approximately three days later, Mina sent another email to the court, prefacing this correspondence with an apology for "being unclear" in his prior email. *See* Doc. No. 81. In this email, Mina again expressed his displeasure with the court's prior procedural rulings and indicated a desire to file another amended complaint to add more allegations. *See id.* On the date that the second email was docketed, the court entered an order directing the plaintiffs to show cause why the court should not sanction them for failing to comply with the court's July 24 order and scheduling a hearing on the issue of sanctions to be held in conjunction with the hearing and argument on jurisdiction. *See* Doc. No. 82.

Three days later, the plaintiffs filed a motion to recuse the undersigned given their perception that the undersigned was retaliating against them for exposing "a situation similar to

8

the 'Kids for Cash' scandal that involves sex abuse Plaintiff and other individuals suffered from." *See* Doc. No. 83 at 1. The motion also stated that the court's July 24 order violated the plaintiffs' First Amendment rights. *See id.* at 3. Not only did the motion request the undersigned's immediate removal from this matter, but it also requested that the court's July 24 order be vacated, that the disposition of the motions to dismiss be stayed, and that a Rule 16 conference be scheduled. *See id.* at 6.

Subsequently, the court denied the plaintiffs' request to postpone the August 21 hearing and argument and informed the parties that the court would address the issue of recusal as a preliminary issue at the time of that proceeding. *See* Doc. No. 93. Around this time, the plaintiffs filed a response addressing the issue of jurisdiction. *See* Doc. No. 90. Many of the defendants also filed documents addressing the issue of subject-matter jurisdiction. Indeed, documents were filed by all parties addressing the issues of jurisdiction, sanctions, and recusal right up until the time of the August 21 proceeding[4]—the procedural highlight of this matter. *See* Doc. Nos. 94-99, 102-104, 107-108.

The court held the proceeding as scheduled. Exceeding the length of the prior oral argument, this proceeding lasted more than three hours. Structured around the aforementioned three issues, the proceeding provided the parties with an exhaustive opportunity to address any and all outstanding issues. Despite providing the defendants with an opportunity to be heard, the court heard from the plaintiffs (*i.e.* Mina) almost the entire time.[5] After the conclusion of the proceeding, the court denied the plaintiffs' motion for recusal and afforded them an opportunity

---

[4] In one response to the court's order to show cause why the plaintiffs should not be sanctioned, the plaintiffs asserted that the court's July 24 order "did not specify who or what Judge Edward Smith meant by using the word 'court.'" *See* Doc. No. 108 at 1. The plaintiffs further noted that they have litigation "in several courts" and that Mina knows "many females named Courtney who are often called 'court.'" *See id.*
[5] Towards the end of the proceeding, Mina stressed that he had not "gotten started." Doc. No. 118 at 102.

to supplement their response covering the issue of jurisdiction.  In addition, the court took the issue of sanctions under advisement.

After the court disposed of a couple of motions for clarification and reconsideration filed by the plaintiffs, the nature of the filings changed course and the plaintiffs began filing various "notices" with the court.  Some of the notices served the purpose of reminding some of the defendants that "Plaintiff is not in agreement with being the victim in this conspiracy."  Doc. No. 121 at 2.  Another notice (and again in contravention of procedural rules and prior court orders) purported to be another amended complaint.  *See* Doc. No. 123.  In this amended complaint, the plaintiffs named the undersigned and the entire "U.S. Eastern District Court" as defendants, advanced additional causes of action, and sought new forms of relief, including a court order "requiring the U.S. Eastern District Court to notify all ECF system users that their personal information may have been accessed without their knowledge or permission" and a court order sanctioning the undersigned because the undersigned has "documented his role in the conspiracy against Plaintiff."  *Id.* at 5, 156.  Taking the court up on the opportunity to supplement their response on the issue of jurisdiction, the plaintiffs also filed a lengthy jurisdictional memorandum that broke down how the court possesses jurisdiction over certain groups of defendants.  *See* Doc. No. 124.

Given the presence of another improperly filed amended complaint, motion practice resumed.  In between the filing of motions (by all parties), the plaintiffs continued to file "notices."  In addition to reiterating their opposition to being a victim of a criminal and civil conspiracy, the plaintiffs informed the court that they had reported misconduct to the FBI.  *See* Doc. No. 131 at 2.  They also filed a motion to change venue to have this matter transferred to another district.  *See* Doc. No. 137.

October 1, 2015, ushered in one of the more interesting days that this litigation has seen. On this date, the plaintiffs filed a "notice" indicating that they "would like to see proof that the U.S. Eastern District Court is aware of the individual (*who Plaintiff did not inform the court of*) who provided Plaintiff with information that reminded Plaintiff how to respond to the Order dated July 24, 2015."  Doc. No. 139 at 1 (emphasis added).  The notice ended with something like a warning, stating that "PROOF IS NEEDED BEFORE PLAINTIFF GET'S [sic] HIS DAUGHTER OFF THE SCHOOL BUS TODAY AT 4:00 P.M."  *Id.* at 2.  Also on this date, the plaintiffs filed another "notice" advising that they had commenced a new lawsuit (this is the other action that was mentioned above), that the new complaint names the undersigned and the "U.S. Eastern District Court of PA" as defendants, and that the plaintiffs desire to consolidate that matter with the instant matter.[6]  *See* Doc. No. 140.

These filings, of course, prompted renewed motion practice.  This bout of filings saw motions to strike filed by some of the defendants, motions to strike other motions to strike filed by the plaintiffs, a motion for consolidation filed by the plaintiffs, and a motion to stay proceedings pending transfer to another district filed by the plaintiffs.  *See* Doc. Nos. 141, 143-44, 147-49.

In the wake of a brief lull in filings, the plaintiffs filed new motions and new (now-familiar) "notices" on October 23, 2015 and October 26, 2015.  Some of those notices included some remarkable emails.  One such notice explained that Mina had contacted the President both to report "a human trafficking and sex trafficking ring that forces people to do police work" and to give the President some tips, such as investigating the route that Mina took to get to the federal courthouse in Easton, Pennsylvania.  Doc. No. 151-1.  The notice even offered the

---

[6] This action is currently pending before the Honorable J. William Ditter, Jr. and is docketed as follows: *Anthony Stocker Mina, et al. v. Chester County, et al.*, No. 15-5452.

defendants a tip, in the form of advice that they too should contact the President for help while discovery is stayed. *See* Doc. No. 151. The motions, on the other hand, appeared to be more routine and continued to demand justifications as to why the court had stayed discovery and set aside certain defaults. One of the defendants filed a motion to strike yesterday. *See* Doc. No. 157.

With outstanding issues of jurisdiction, procedure, and sanctions lingering, and satisfied that the plaintiffs have had a meaningful opportunity to clarify their factual allegations and litigation positions, the court is prepared to dispose of this action in its entirety at this time. Ordinarily, the court would turn first (and sometimes last) to jurisdiction—and in this case, to appreciate the procedural history is to begin to answer the question whether the court possesses jurisdiction over the alleged conspiracy. Due to some unusual twists, however, it is necessary to address some matters of procedure at the outset.[7] The court, then, first addresses the revived issue of recusal and the issue with respect to the defaults. The court then gets to jurisdiction. A brief discussion of sanctions concludes.

## II.     DISCUSSION

### A.     Procedure

Considering that the plaintiffs have attempted to file an amended complaint in this action naming the undersigned and the entire district court as defendants, have asked that this matter be transferred to another district, and have filed a new action naming those same defendants, the most pressing procedural question revolves around the question whether the undersigned must recuse himself from this action. The answer is no.

---

[7] The court is comfortable proceeding along the charted path given the general principle that "[j]urisdiction is vital only if the court proposes to issue a judgment on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks and citation omitted). Certainly, the court proposes to issue no such judgment here. Non-merits issues, then, are sorted out in an intuitive order.

In general, while "a party may seek to recuse a federal judge on the basis of bias or prejudice" under 28 U.S.C. § 144, 28 U.S.C. § 455 "requires a judge to recuse where his or her impartiality might reasonably be questioned." *Petrossian v. Cole*, 613 F. App'x 109, 112 (3d Cir. 2015) (citation omitted).  Under either statute, "a party's displeasure with legal rulings does not form an adequate basis for recusal." *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000) (citations omitted).  Further, "recusal is not required on the grounds of unsupported, irrational, or highly tenuous speculation." *In re Kokinda*, 581 F. App'x 160, 161 (3d Cir. 2014) (internal quotation marks and citation omitted).  If these principles exhausted the analysis, the court would conclude that recusal is not warranted on this record and end the consideration of this issue.[8]

The wrinkle, however, is that the plaintiffs have named the undersigned as a defendant in a separate action and have attempted to name him as a defendant in this action.  This calls for heightened alert, although the court is always on alert when potential issues of recusal come forth, because 28 U.S.C. § 455(b)(5)(i) mandates that a federal judge "shall . . . disqualify himself" when "[h]e . . . [i]s a party to the proceeding."  Despite this strong language, the undersigned concludes that he need not recuse himself from this matter given its unique posture.  In fact, he may actually have an affirmative duty to preside over it.  *See Matter of Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 839 F.2d 1226, 1229 (7th Cir. 1988) (stating that "[j]udges have an obligation to litigants and their colleagues not to remove themselves needlessly" (citation omitted)).

In the first instance, and as it relates to the instant action, it is not even clear that the undersigned has actually been named as a defendant.  To be sure, the plaintiffs named the

---

[8] At the August 21 proceeding, the undersigned assured the plaintiffs that he was not part of a conspiracy against them, even though they believed that he had become involved in an underlying conspiracy when he issued the July 24 order.  *See* Doc. No. 118 at 34, 45.

undersigned as a defendant in an improperly filed amended complaint.[9]  *See* Doc. No. 123.  But even if the undersigned is considered a true defendant, some courts have recognized, at least in principle, a potential exception to 28 U.S.C. § 455(b)(5)(i) when the naming of a judge as a defendant is frivolous.  *See Davis v. Kvalheim*, 261 F. App'x 231, 233 (11th Cir. 2008) (observing that the district judge did not recuse when named as a defendant in reliance on the notion that recusal is not necessary when "a plaintiff baselessly sues or threatens to sue the judge" (internal quotation marks omitted)); *Gabor v. Seligmann*, 222 F. App'x 577, 578 (9th Cir. 2007) (affirming a judge's decision not to recuse when named as a defendant in an amended complaint (citations omitted)).  This is simply not a situation where the undersigned was named as a defendant in the original complaint.  *See Akers v. Weinshienk*, 350 F. App'x 292 (10th Cir. 2009).  And the fact that the undersigned is named as a defendant in a matter currently pending before another judge does not tilt the scales anymore in favor of recusal because "[a] judge is not disqualified merely because a litigant sues or threatens to sue him."  *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977); *see Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006) (noting that "the mere fact that [a judge] may be one of the numerous federal judges that [a plaintiff] has filed suit against is not sufficient to establish that [the judge's] recusal from [the] case is warranted under 28 U.S.C. § 144 or § 455(a)" (footnote and citations omitted)).  "Such an easy method for obtaining disqualification should not be encouraged or allowed."  *Ronwin v. State Bar of Arizona*, 686 F.2d 692, 701 (9th Cir. 1981).

There is also the rule of necessity.  *Carter v. All Dist. Fed. Judges, U.S.A.*, 441 F. App'x 859, 859 n.2 (3d Cir. 2011) (recognizing this rule).  This rule "permits a district judge to hear a case in which he is named as a defendant where a litigant sues all the judges of the district."

---

[9] Not only did this complaint violate Federal Rule of Civil Procedure 15(a), because the plaintiffs failed to obtain permission from opposing counsel or the court, but it also violated the court's July 24 order.  *See* Fed. R. Civ. P. 15(a); Doc. No. 78.

*Glick v. Edwards*, No. 13-35230, 2015 WL 5827583, at *4 (9th Cir. Oct. 7, 2015).  Pushing the rule beyond its literal bounds, some courts have extended this rule to situations where "a plaintiff who has not yet sued every judge" "has made it plain by his pattern of litigation that he will eventually do so."  *Coggins v. Town of Jackson's Gap*, No. 308-CV-264-TMH, 2008 WL 2074429, at *2 n.4 (M.D. Ala. May 14, 2008) (citation omitted).  Here, the plaintiffs have sued Judge Restrepo, Judge Goldberg, and now the undersigned—judges who have all done something wrong in the eyes of the plaintiffs.  Not only have they also sued the entire "U.S. Eastern District Court," but they have requested to have this case transferred to another district. With respect to the potential naming of other federal judges in this district as defendants, it takes no great guesswork to figure out what the future holds should the plaintiffs persist in filing lawsuits.  To recuse in this case would be to create "as many problems as it solves."  *Glick*, 2015 WL 5827583, at *4.  This cannot happen.

Accordingly, and after careful consideration of the record and the above statements of law, and regardless of whether those statements operate together or independently against the background of this case, the undersigned declines to recuse from this matter.  The court now briefly turns to the issue of the defaults.

Time and again, the plaintiffs have expressed great frustration with the court's refusal to entertain defaults and enter default judgments.  Defaults are generally coveted by plaintiffs because they serve as a predicate to default judgments.  *Shipman v. Talley*, No. 15-1158, 2015 WL 5846589, at *2 n.4 (3d Cir. Oct. 8, 2015) (describing the procedure for obtaining a default judgment).  But default judgments themselves are not an automatic remedy.  *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003) (reiterating the factors that control whether a default judgment should be granted).  Federal courts must always ensure that they are

acting within their jurisdiction when they grant relief on the merits.  *See Jimenez v. Rosenbaum-Cunningham, Inc.*, No. 07-1066, 2010 WL 1303449, at *5 (E.D. Pa. Mar. 31, 2010) (stating that the court "should also ensure that [it has] both personal and subject matter jurisdiction before entering a default judgment" (citation omitted)).

Here, the unique nature of the plaintiffs' requests prompted the court to act in the face of a reasonable likelihood that there was (and is) a serious jurisdictional problem with this case. Perhaps the court could have waited and allowed the plaintiffs to file motions for default judgments, but it is not clear what purpose that would have served other than to cause undue confusion and panic.  Had the court been presented with a procedurally proper default judgment motion, the court would have considered subject-matter jurisdiction as the very first issue and would have denied the request pending further clarification of jurisdiction—personal jurisdiction, and necessarily service of process, would have been next and this too would have had to have been clarified with facts not then before the court.  In any event, it appears that courts possess the "authority to *sua sponte* set aside an entry of default" for good cause.  *Feliz v. Kintock Grp.*, 297 F. App'x 131, 137 (3d Cir. 2008) (citation omitted).  This case, comprised of a huge number of defendants and far-reaching requests for relief, cried out for the court to ensure that all efforts were trained on determining whether this case engaged federal jurisdiction.  The use of procedural flexibility was indeed called for; but called for, first and foremost, to determine jurisdiction.  The set asides were a step in that direction and the court exercised appropriate discretion.  *See Mitchell v. Central Bank & Trust*, 49 F.3d 728 (5th Cir. 1995) (confirming that a failure to answer a complaint "cannot waive the jurisdictional requirement" (citation omitted)). In any event, this has turned out to be a non-issue because the court indeed lacks jurisdiction, as explained in the next section.

16

### B.     <u>Subject-Matter Jurisdiction</u>

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "A facial attack on the legal sufficiency of a claim of a federal question will succeed where the claim is so insubstantial, implausible, foreclosed by prior decisions of [the United States Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy."  *Kalick v. United States*, 604 F. App'x 108, 111 (3d Cir. 2015) (internal quotation marks and citation omitted).[10]   "The presumption, however, is that the dismissal of even a very weak case should be on the merits rather than because it was too weak even to engage federal jurisdiction."  *Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010) (citations omitted).   The animating theme appears to be this: "[d]istinguishing between 'essentially fictitious' claims . . . that do not invoke federal jurisdiction and those in which a fairly debatable claim fails on the merits is essential if the federal courts are to remain tribunals of limited jurisdiction."  *Goros v. County of Cook*, 489 F.3d 857, 860 (7th Cir. 2007).  Claims grounded in "bizarre conspiracy theories, government manipulations of the mind, or supernatural intervention" have become prime candidates for jurisdictional dismissals.  *Weisser v. Obama*, No. 13-1257 RMC, 2013 WL 4525319, at *1 (D.D.C. Aug. 27, 2013) (citations omitted).  For a recent take on this doctrine, see *Carter v. Homeward Residential, Inc.*, 794 F.3d 806 (7th Cir. 2015) (Posner, J.).

As can be gleaned from the discussion of the procedural history, this case involves allegations of an elaborate (elaborate might not even do it justice) governmental conspiracy,

---

[10] The court has resolved no contestable factual issues.  The court scheduled the August 21 proceeding simply to clarify and determine "what the plaintiff[s] [are] alleging."  *Williams v. Wahner*, 731 F.3d 731, 734 (7th Cir. 2013). As noted in that case, sometimes people have better luck expressing themselves in oral, rather than in written, form. The court never deviates from taking the plaintiffs' factual allegations as is.

although some private actors appear to be involved, against the plaintiffs dating back to 1996.

The amended complaint begins:

> Before this Honorable Court is a Civil Rights case dating back to 1996 using the Continuing Wrong and Continuing Violations Doctrine. Plaintiff's Civil Rights are continually violated by the Defendants and at the present time Plaintiff is the victim of an ongoing criminal and civil conspiracy by the Defendants to deny Plaintiff PUBLIC INFORMATION on himself, such as court records, juvenile records, and court transcripts.

Doc. No. 15 at 3.  It continues:

> Defendant Judge Goldberg entered an Order on May 15, 2014 requiring Plaintiff to Amend his Complaint to briefly explain how and when each Defendant violated Plaintiff's Constitutional rights and the harm done. Plaintiff was also Ordered by Judge Goldberg to remove all excerpts from correspondence and legal argument. Plaintiff interpreted Defendant Goldberg's request to remove all excerpts from Correspondence as a hint to remove Tom Corbett from his Complaint. Instead of removing Tom Corbett from Plaintiff's Complaint, Plaintiff informed Defendant Judge Goldberg of an allegation of sex abuse at a juvenile detention center and issues relating to Plaintiff's penis in court records.

*Id.*  It goes on.  After reading the amended complaint, with a forgiving eye given the plaintiffs' *pro se* status, one comes away with the impression that the government, on every conceivable level, has concocted a grand scheme to literally destroy every aspect of Mina's life.  Later filings by the plaintiffs only confirm this impression.  For example, the plaintiffs state the following in a response in opposition to a motion to dismiss:

> More importantly, it should be noted that the defendants are named the Chester County Moluscum Penis Crime Family for their involvement in literally attacking Plaintiff for nearly two decades after he was a victim of government corruption. As Plaintiff's Complaint states, the defendants use code without Plaintiff's approval to attempt to conspire against Plaintiff in their court records/reports.

Doc. No. 72 at 2.  The record made in an effort to clarify the plaintiffs' allegations truly speaks for itself, but the general theme is the same.

It may seem paradoxical that allegations of a monumental governmental conspiracy to deprive the plaintiffs of their federal rights in breathtaking ways do not ignite federal

jurisdiction.  But something has to give.  If jurisdictional dismissals of frivolous federal-question claims to preserve the idea of limited jurisdiction means anything, it means that this case must be resolved on the merits elsewhere.  No more precise line-drawing is needed in this case.

Consequently, the court dismisses this action for want of subject-matter jurisdiction. Supplemental jurisdiction over any related state-law claims does not attach because original jurisdiction never attached.

### C.        Sanctions

Because the court had taken the issue of sanctions under advisement at the conclusion of the August 21 proceeding, a brief word is in order.  It is clear that the plaintiffs violated the court's July 24 order, which directed the plaintiffs to communicate with the court and opposing counsel only through the electronic filing system.  *See* Doc. No. 78.  It also seems clear that the order is constitutional.  Nonetheless, the court declines to impose sanctions of any kind given the minimal harm resulting from any violations and the plaintiffs' current status.

### III.    CONCLUSION

In one filing, the plaintiffs proclaim that they have paid the filing fee for a judge "to make intelligent, unbiased decisions that are supported by law on the facts of Plaintiff [sic] case." Doc. No. 116 at 2.  That is precisely what they got.  The plaintiffs appear to be in an unfortunate situation.  To the extent possible, the court has aimed to accommodate that situation.  But *pro se* cases have limits.  Jurisdiction is surely one of them.  That limit has been reached.

For these reasons, and for the reasons previously stated, the court dismisses this action without prejudice for lack of subject-matter jurisdiction.  The plaintiffs' motion for the costs of

service is denied.[11]   The plaintiffs' motion to transfer venue is denied.  All remaining motions are denied as moot.

The court will issue a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[11] The plaintiffs have not shown that they have satisfied Federal Rule of Civil Procedure 4(d)(1)(A)(ii)—this section applies because they are seeking costs from entities, not individuals.  In addition, it may be the case that the plaintiffs were not even entitled to request waiver from some of the governmental entities.  *See Constien v. United States*, 628 F.3d 1207, 1213 (10th Cir. 2010) (stating that "[t]he government cannot waive service of process" (citations omitted)).